IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANITA DEVI and KUNAAL VENKAT,

    Petitioners,                       No. 2:08-cv-2671 JFM (HC)

    vs.

MICHAEL B. MUKASEY, etc., et al.,

    Respondents.                     <u>ORDER</u>

_____/

        Petitioners are civil detainees presently detained in the Yuba County Jail pursuant to a final order of removal. The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). Petitioners' motion for preliminary injunction came on regularly for hearing December 18, 2008. Jagdip Singh Sekhon appeared for petitioners. Audrey B. Hemesath, Assistant United States Attorney, appeared for respondents. Upon review of the motion and the documents in support and opposition, upon hearing the arguments of counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

        Petitioners Anita Devi and Kunaal Venkat are citizens and nationals of Fiji. They are subject to a final order of removal, and based on that order, respondents are detaining them pursuant to Immigration and Nationality Act ("INA") § 241(a)(6), 8 U.S.C. § 1231 (a)(6). Petitioners are currently challenging the denial by the Board of Immigration Appeals ("BIA") of

1

their motion to reopen their removal proceedings through a petition for review pending with the United States Court of Appeals for the Ninth Circuit.  See Devi, et al., v. Mukasey, 08-72786.  The Court of Appeals has stayed their removal pending the adjudication of their petition for review, and respondents have detained petitioners in the Yuba County Jail since May 27, 2008, and intend to detain them during the pendency of the adjudication of their petition for review.  See id.  Petitioners are thus facing prolonged detention.  See Casas-Castrillon v. DHS, 535 F.3d 942, 949-50 (9th Cir. 2008)(detention pending judicial review, although not indefinite, is prolonged.)

Petitioners' habeas petition challenges the legality of their prolonged detention as well as their prolonged detention without being afforded a bond hearing.  Petitioners have also filed a motion for preliminary injunction seeking to enjoin respondents from further detaining them without granting them a hearing before a neutral decision maker – an immigration judge – for the purpose of determining whether their prolonged detention during the course of the adjudication of their petition for review is warranted either because they pose "a risk to the community" or because they are "unlikely to comply with the order of removal."  See INA § 241(a)(3), 8 U.S.C. § 1231(a)(3).

BACKGROUND[1]

Petitioner Anita Devi and Kunaal Venkat are both citizens and nationals of the Fiji Islands.  Ms. Devi is a divorced mother of two children, and one of her children is her son Kunaal, age nineteen.  Ms. Devi and Kunaal left Fiji on March 18, 1993, and that same day arrived in the United States at San Francisco, California.  The immigration authorities admitted Ms. Devi and Kunaal as visitors until September 17, 1993.  They have remained in the United States ever since.

---

[1] The facts of the case are undisputed and the defendants concur with the recitation set forth by petitioners, with the exception of petitioners' ultimate conclusions regarding the alleged ineffective assistance of former counsel. (Opp'n at 3, citing Pet's Ps & As in Support of Mot. for PI, at 3-6.)

2

Ms. Devi left Fiji with Kunaal because she was fleeing persecution on account of her South Asian ethnicity.  Within one-year of her arrival in the United States, in mid-1994, Ms. Devi applied for asylum with the former Immigration and Naturalization Service (INS).  INS referred her application to the Office of the Immigration Judge (IJ).  Ms. Devi hired attorney Miguel Gadda who represented Ms. Devi from 1994 until 2002, when the State Bar of California disbarred him.  Petitioners contend Mr. Gadda represented her ineffectively.

The administrative agency denied Ms. Devi's application for asylum and related relief, resulting in a final order of removal in October 28, 1997.  The Court of Appeals denied Ms. Devi's petition for review of the agency's decision on March 2, 1999.  Mr. Gadda filed a motion to reopen with the BIA in July 1999 that the BIA denied on December 14, 1999.  Mr. Gadda filed a second motion to reopen with the BIA on July 20, 2000; the BIA denied this motion on January 30, 2003.  Mr. Gadda was disbarred in 2002 while the second motion to reopen was pending.

Ms. Devi hired Martin Rezendez Guajardo to replace Mr. Gadda.  Mr. Guajardo did nothing until the BIA denied Ms. Devi's second motion to reopen.  Then, on Ms. Devi's behalf, Mr. Guajardo petitioned the Court of Appeals to review the BIA denial.  The Court of Appeals dismissed Ms. Devi's petition for review on August 17, 2004.

In September 2004, more than two and one-half years after he began representing Ms. Devi, Mr. Guajardo moved the BIA to reopen Ms. Devi s removal proceedings, and the BIA denied it stating that the motion to reopen was filed beyond the ninety day regulatory deadline, and petitioners were not entitled to equitable tolling of the deadline until September 2004.  Mr. Guajardo filed a petition for review challenging the denial of the motion to reopen, and on December 13, 2006, the Court of Appeals denied it.  Mr. Guajardo filed another motion on behalf of petitioners, their fourth motion and the second motion prepared by Mr. Guajardo.  The BIA denied the motion in December 2007.  Mr. Guajardo advised petitioners to seek Court of Appeals review of the BIA s denial of the motion to reopen, took petitioners' money, but did not file the

petition for review. Mr. Guajardo was disbarred on April 17, 2008.[2] Ms. Devi learned of Mr. Guajardo's failure to file on February 22, 2008.

On February 22, 2008, Ms. Devi met with present counsel with her case file, and recounted its history. After reviewing the case file, petitioners' present counsel advised petitioners they may have a viable motion to reopen based on the ineffective representation of Messrs. Gadda and Guajardo.

On or about May 19, 2008, Ms. Devi and Kunaal filed a motion to reopen with the BIA based on the ineffective assistance of Messrs. Gadda and Guajardo. They also filed a motion to stay their removal with the Board pending the adjudication of their motion to reopen. They subsequently filed a request with DHS, specifically its San Francisco District Director, seeking the same relief. The BIA first denied the motion for stay, and then denied petitioners' motion to reopen. The BIA did not express doubt regarding the ineffective representation of Messrs. Gadda and Guajardo. The BIA, however, held that petitioners failed to demonstrate the prejudice necessary to support a motion to reopen. Petitioners are seeking judicial review of the denial of the motion to reopen, and the Court of Appeals has stayed their removal pending review.

Immediately following the filing of their motion to reopen, on or about May 19, 2008, DHS, unannounced, raided petitioners' home ostensibly to apprehend and remove them. Ms. Devi and Kunaal eluded DHS at that time. Petitioners then called their present counsel who arranged for them to surrender to DHS on May 27, 2008. DHS took Ms. Devi and Kunaal into custody on the grounds that their removal was imminent.

In August 2008, DHS referred the case to the IJ for a hearing to review Petitioners' custody status. DHS did so pursuant to Casas-Castrillon, which held that non-citizens in DHS custody seeking direct review of a final order of removal are detained under

---

[2] California State Bar (visited Dec. 19, 2008) <http://members.calbar.ca.gov/search/member_detail.aspx?x=75605>.

4

INA § 236(a), 8 U.S.C. § 1226(a), and are entitled to such a hearing. The hearing was scheduled for October 23, 2008.

Prior to the October 23rd hearing, the Court of Appeals decided Diouf.[3] Diouf held that Casas-Castrillon v. Mukasey, 535 F.3d 942 (9th Cir. 2008) did not address whether non-citizens such as petitioners are entitled to a hearing to review their custody status, because DHS's authority to detain them was not based on INA § 236(a), 8 U.S.C. § 1226(a). Diouf, 542 F.3d at 1229-30. DHS's authority to detain petitioners and non-citizens like them, instead rested on INA § 241(a), 8 U.S.C. § 1231(a), because they were seeking review of an agency's denial of a motion to reopen removal proceedings, and not seeking direct review of a final order of removal. Id. Diouf left open the question of whether non-citizens in petitioners' circumstance were entitled to a hearing to review their custody status. Id.

At the October 23, 2008, hearing, the IJ summarily held that he did not have jurisdiction to review petitioners' custody status, citing Diouf.

On November 7, 2008, petitioners filed the instant petition.

## SUBJECT MATTER JURISDICTION

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings are available as a forum for statutory and constitutional challenges to the authority of the Attorney General to order detention of a person. See Zadvydas v. Davis, 533 U.S. 678, 688, 121 S.Ct. 2491 (2001); Nadarajah v. Gonzales, 443 F.3d 1069, 1075 (9th Cir.2006). The REAL ID Act of 2005, Pub.L. No. 109-13, Div. B., 119 Stat. 231, does not divest this court of jurisdiction over habeas petitions that do not involve final orders of removal. Nadarajah, 443 F.3d at 1075. As petitioners are challenging their continued detention and not an order of removal, this court has habeas corpus jurisdiction over the claims related to their detention.

---

[3] Diouf v. Mukasey, et al., 542 F.3d 1222 (9th Cir. 2008), request for *en banc* rehearing pending.

INSTANT PETITION

Petitioners and respondents do not dispute the facts of this case and also agree that this case presents the question left unresolved in Diouf, 542 F.3d at 1222.

Respondents contend that aliens seeking collateral review of their removal orders are not similarly situated to aliens seeking direct review of their removal order and that there is nothing extraordinary about this case to distinguish it from Diouf.  Respondents maintain that the ICE post-order review scheme is adequate and that aliens detained pursuant to § 241(a) are not entitled to a bond hearing before an immigration judge.

Petitioners argue that the governing statute does not authorize the prolonged detention of petitioners without providing them a bond hearing before an immigration judge and that, even assuming the statute authorizes their prolonged detention, the prolonged detention violates their constitutional right to due process unless they are granted a bond hearing. Petitioners contend they have a due process right to a bond hearing before a neutral decision maker to determine whether petitioners pose a flight risk or a danger to the community because the pending petition for review will not be decided in the foreseeable future.

ANALYSIS

Zadvydas concerned the indefinite detention of aliens pursuant to the post-removal-order detention statute, INA § 241(a), 8 U.S.C. § 1231(a), following a final order of removal. Zadvydas, 533 U.S. at 678. Section 241(a)(1)(A) states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:

> (i)  The date the order of removal becomes administratively final.
>
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

      (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). During the removal period, continued detention is required. INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). Under Section 241(a)(6), the Attorney General may detain an alien beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

      The Supreme Court has considered whether INA § 241(a)(6) authorizes the government "to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." Zadvydas, 533 U.S. at 682. The Zadvydas petitioners could not be removed because no country would accept them. Id. Therefore, removal was "no longer practically attainable," and the period of detention at issue was "indefinite" and "potentially permanent." Id. at 690-91. The Supreme Court held that INA § 241(a)(6), which permits detention of removable aliens beyond the 90-day removal period, does not permit "indefinite detention." Id. at 689-690. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699.

      Zadvydas further held that detention remains presumptively valid for a period of six months. Id. at 701. After this six-month period, an alien is eligible for conditional release upon demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701. At that time, the burden shifts to the Government to respond with sufficient evidence to rebut that showing. Id. at 701. The six-month presumption

> does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

/////

1    The Supreme Court later held that Zadvydas applied to inadmissible aliens as
well. Clark v. Martinez, 543 U.S. 371 (2005).[4] The Clark Court found it could not justify giving the same statutory text a different meaning depending on the characteristics of the aliens involved, citing Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285 (1932), Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 122 S.Ct. 999 (2002), and Jinks v. Richland County, 538 U.S. 456, 123 S.Ct. 1667 (2003)(distinguished). Clark, 543 U.S. at 372.

> Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal.

Clark, 543 U.S. at 372, citing Zadvydas, 533 U.S. at 697-699.

In Casas-Castrillon v. Mukasey, 535 F.3d 942 (9th Cir. 2008), the Court of Appeals held that certain aliens detained by U.S. Immigration and Customs Enforcement (ICE) pursuant to INA § 236(a), 8 U.S.C. § 1226(a), must be given a bond hearing before an Immigration Judge, rather than the post-order detention review scheme previously employed by ICE. The certain aliens affected by the Casas case are aliens who (1) have filed a Court of Appeals petition for review of their final order of removal; (2) have obtained a stay of removal in conjunction with that petition; and (3) have been in detention in excess of the six-month time-frame set forth in Zadvydas v. Davis, 533 U.S. 678 (2001).

In Diouf, the Court of Appeals considered the plight of aliens situated identically to those in Casas, but with one exception: the aliens are seeking review of a denial of an administrative motion to reopen, rather than the removal order itself. Diouf, 535 F.3d 942. The Diouf Court clarified that these aliens who are pursuing a collateral challenge to their removal

---

[4] See Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 125 S.Ct. 2169 (2005)(plurality opinion)(describing Clark as "simply a rule of consistent interpretation of the statutory words).

order are detained pursuant to INA § 241(a), 8 U.S.C. § 1231(a).  In Casas, by contrast, the Court held that the direct petition for review aliens are detained pursuant to INA § 236(a); 8 U.S.C. § 1226(a).  The Diouf Court did not go on to decide the ultimate question of whether aliens detained pursuant to 8 U.S.C. § 1231(a) must also be provided a bond hearing before the Immigration Judge rather than the post-order detention review scheme employed by ICE.  The Court remanded that question to the district court, to consider in light of the circumstances of that case.

## INJUNCTIVE RELIEF

The legal principles applicable to a request for preliminary injunctive relief are well established.  "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  Dollar Rent A Car v. Travelers Indem. Co., 774 F.2d 1371, 1374 (9th Cir. 1985).  The criteria are traditionally treated as alternative tests.  "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates 'either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.'"  Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984) (quoting William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975)).

Title 8 U.S.C. § 1231(a)(6) provides that "[a]n alien ordered removed who is inadmissible . . . or removable [under this title] may be detained beyond the removal period."  As noted by the United States Supreme Court, this statute is ambiguous because "[t]he statute's use of "may" is ambiguous and does not necessarily suggest unlimited discretion."  Zadvydas, 533 U.S. at  697.  Because of this ambiguity, and because petitioners' personal liberty is at stake, the instant case presents the serious question of whether a removable alien can be detained for a

/////

9

prolonged period without benefit of a bond hearing before a neutral decision-maker to determine whether the alien is a flight risk or a danger to the community.

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that Clause protects. See Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780 . . . (1992). And this Court has said that government detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, see United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095 . . . (1987), or, in certain special and "narrow" nonpunitive "circumstances," Foucha, supra, at 80, 112 S.Ct. 1780, where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint." Kansas v. Hendricks, 521 U.S. 346, 356, 117 S.Ct. 2072 . . .(1997).

Zadvydas, 533 U.S. at 690.

Section 1231(a)(6) provides the Attorney General with the authority either to detain an alien beyond the removal period or to release him or her subject to the terms of supervision specified under § 1231(a)(3). The Court of Appeals has construed § 1231(a)(6) to permit release on bond. See Doan v. INS, 311 F.3d 1160, 1162 (9th Cir.2002). Moreover, the regulations that implement the statute also expressly permit bond as a condition of release. See 8 C.F.R. § 214.5(b).

The Diouf court noted it "considered a somewhat similar question in Casas-Castrillon." Diouf, at 1234-35. In Casas-Castrillon, the court considered whether § 1226(a) authorized lawful permanent residents to be subjected to prolonged detention pending judicial review of a final order of removal without being provided a due process hearing before a neutral decision maker. Id., 535 F.3d at 949-50. The court found that prolonged detention of a lawful permanent resident would be "constitutionally doubtful," and construed § 1226(a) as "requiring the Attorney General to provide the alien with . . . a [bond] hearing." Id. at 951 (emphasis in original).

The <u>Diouf</u> court stated

> Given the limited holding of <u>Casas-Castrillon</u>, it remains unclear whether due process concerns would require a similar construction of § 1231(a)(6) in a case involving an alien, such as <u>Diouf</u>, who is not a legal permanent resident and who, unlike the alien in <u>Casas-Castrillon</u>, has been ordered removed by the BIA, has exhausted his opportunities to challenge that final order of removal directly, and has previously been granted release on bond and had the bond cancelled for failure to timely depart.

<u>Diouf</u>, at 1234-35.

In light of the above authorities, it is clear that the statute provides for detention of petitioners beyond the 90 day removal period. 8 U.S.C. § 1231(a)(6). The sole question here, then, is whether respondents may hold petitioners beyond the removal period without affording them a bond hearing before a neutral decision-maker

Given the Supreme Court's language in <u>Zadvydas</u> and its clarification in <u>Clark</u>, this court is not persuaded that respondents may detain petitioners without a bond hearing simply because their petition for review challenges the BIA's denial of their motion to reopen rather than seeking direct review. It is the prolonged civil detention without benefit of a bond hearing before a neutral decision-maker that runs afoul of the constitutional right to due process. The same important interest – freedom from detention – is at stake, no matter the nature of the legal challenge.

While respondents have an interest in ensuring petitioners are available for deportation if the Court of Appeals denies petitioners' petition for review, that interest is protected by virtue of a neutral decision-maker holding a bond hearing to determine whether, in fact, petitioners pose a flight risk or a danger to the community. Whether or not the alien is challenging the order of removal on direct review or seeking to reopen on collateral review, in both instances, the Court of Appeals has found it appropriate to stay the alien's removal.[5] As

---

[5] This court recognizes that in the context of the removal period, the "entry of a stay of removal for any . . . reason other than review of a removal order]–for example, a stay entered

noted above, it is clear that an alien's detention pending resolution of a petition for review will be prolonged, in many cases, for a number of years.

The outcome in both instances is also similar. If the petition for review of the removal order is denied, the alien will be removed. If the petition for review of the denial of the motion to reopen is denied, the alien will be removed. However, in both circumstances, if the petition for review is granted, the removal order will be dissolved.

Petitioners are similarly-situated to Diouf in that they were admitted to the United States as visitors and overstayed the September 17, 1993 expiration of their visitor visa. Like Diouf, they have availed themselves of the legal process available to attempt to remain in the United States. They are also similar to Diouf in that the Court of Appeals granted their motion to stay their removal pending resolution of the petition for review of the BIA's denial of their motion to reopen.

Petitioners differ from Diouf, however, because they have not been granted a bond hearing. Ironically, both Diouf and Casas-Castrillon were provided bond hearings before a neutral decision-maker. Id. Moreover, unlike Diouf, petitioners have not failed to report for deportation and, although they initially fled their home when DHS arrived unannounced, they immediately arranged through their lawyer to voluntarily surrender and were taken into custody just a week later.[6] Apparently petitioners have cooperated with immigration as respondents

---

while a court reviews an alien's § 2241 habeas petition or petition for review of the BIA's denial of a motion to reopen–does not prevent the removal period from beginning." Diouf, 542 F.3d at 1230 (citation omitted). Such a distinction in the removal context, just as the status of the alien, Clark v. Martinez, 543 U.S. 371 (2005), should not trump the due process concerns implicated by the prolonged detention without benefit of a bond hearing before a neutral decision-maker.

[6] Petitioners filed a motion to reopen their deportation proceedings about May 18, 2008. (Pet. at 13.) A few days later, on May 20, 2008, at approximately 5:00 a.m., DHS officers, unannounced, raised petitioners' home seeking to apprehend and detain them. (Pet. at 14.) Petitioners, frightened by the raid, fled from their home. (Id.) After speaking to their counsel, however, petitioners understood that DHS officers were seeking to apprehend them because they were under a final order of removal and they scheduled to surrender themselves to DHS, and were taken into custody on or about May 27, 2008. (Pet. at 14.)

concede they are in possession of travel documents to facilitate petitioners' deportation should the Court of Appeals deny their petition for review.  Finally, unlike <u>Diouf</u>, petitioners have not been accused or convicted of criminal activity during their presence in the United States.

This court finds that aliens subject to removal who have been detained beyond the statutory 90 day removal period but whose removal have been stayed pending review of the denial of their motion to reopen are similarly-situated to those aliens challenging their removal order on direct review.  <u>See</u> <u>Casas-Castillon</u>, 535 F.3d at 950; <u>see also</u> <u>Diouf</u>, 542 F.3d at 1234-35 (citations omitted).  Because they are similarly-situated, they are entitled to a bond hearing before a neutral decision-maker to ensure their due process rights are protected.  <u>Zadvydas</u>, 533 U.S. at 699.[7]

The court turns now to petitioners' request for injunctive relief.  The holding of <u>Casas-Castrillon</u> that non-citizens detained under INA § 236(a), 8 U.S.C. § 1236(a) are entitled to hearings before an IJ to determine whether their prolonged detention is necessary establishes that non-citizens detained under INA § 241, 8 U.S.C. § 1231(a) and seeking the same relief as that extended to the non-citizens in <u>Casas-Castrillon</u> presents a serious question.

Further detention of petitioners without a bond hearing, will irreparably harm them as they are being held in the Yuba County Jail without a determination from a neutral decision-maker that their detention is necessary.  <u>See</u> <u>Casas-Castrillon</u>, 535 F.3d at 950-51.  Such civil detention imposes the hardships that are typically associated with detention.  <u>See</u>, <u>e.g.</u>, <u>National Center for Immigrant Rights, Inc.</u>, 743 F.3d 1365, 1369 (1984).  In addition, such civil detention without a hearing before a neutral decision-maker that addresses its necessity implicates due process concerns under the Fifth Amendment of the United States Constitution.

---

[7] <u>But see</u> <u>Hernandez-Carrera v. Carlson</u>, 547 F.3d 1237 (10th Cir. 2008)(held, inter alia, regulation implementing statute authorizing Attorney General to detain certain classes of aliens beyond 90-day removal period comported with due process).  However, the aliens there were granted hearing before immigration judges who determined that detention was appropriate.  Here, petitioners have not been granted such a hearing.

See Casas-Castrillon, 535 F.3d at 950-51; see also Diouf, 542 F.3d at 1234-35 (9th Cir. 2008)(detaining a noncitizen under INA § 241, 8 U.S.C. § 1231, raises similar due process concerns raised by the detention of a non-citizen under INA § 236, 8 U.S.C. § 1226).

The denial of petitioners' motion for preliminary injunction will result in their continued detention that may be in violation of due process rights.

Respondents, in turn, will suffer relatively little hardship if petitioners are granted the hearing before the IJ that they seek.  Respondents contend they will be burdened by "providing an Immigration Judge hearing, which requires coordination between the Department of Homeland Security and the Executive Office for Immigration Review (part of the Department of Justice).  As well as providing a hearing in this case would result in uncertainty in other collateral challenge detention cases, inviting a rush of litigation." (Opp'n at 7.)  However, presumably the Immigration Judge has a regularly scheduled detention calendar such that adding two hearings with their attendant coordination would be of little consequence as compared to a possible constitutional violation.  Respondents have provided no support for the alleged threat of a "rush of litigation," that would occur should these petitioners be granted such a hearing.

Respondents also relied on the "Interoffice Memorandum" to demonstrate ICE considered three factors supporting its decision to continue detention:  (1) petitioners absconded when DHS first attempted to bring petitioners into ICE custody; (2) petitioners have attempted to delay removal several times by court filings; and (3) ICE is currently in possession of a valid travel document such that removal can be executed immediately upon the lifting of the judicial stay. (Opp'n., Ex. A.)  However, as noted by petitioners, this memo fails to demonstrate ICE's conclusion "was reached after a meaningful consideration of the prescribed factors set forth under 8 C.F.R. § 241.4(f) or agency precedent relevant to determine whether . . . petitioners' prolonged detention is warranted either because they represent a 'danger to the community' or a 'flight risk.'" (Reply, at 5, citing see 8 C.F.R. § 241.4(f).)  There is also no reference to consideration of factors favoring supervised release under INA § 241(a)(3), 8 U.S.C.

§ 1231(a)(3), for example, petitioner Devi's home ownership and lack of criminal record or both petitioners' community and familial ties.  In addition, the memo fails to specifically address petitioner Venkat at all.  Petitioner Venkat has been in the United States for 16 of his 19 years and was attending college at the time of his detention.  It appears petitioner Venkat has received no process at all.

The balance of hardships thus weighs heavily in petitioners' favor.

Finally, the Diouf Court acknowledged that the issue of whether INA § 241, 8 U.S.C. § 1231, authorizes respondents' prolonged detention of non-citizens in petitioners' circumstance raises issues similar to those presented in Casas-Castrillon.  Diouf, 542 F.3d at 1234-35.  Casas-Castrillon held that legal permanent residents facing removal and detained under INA § 236(a), 8 U.S.C. § 1236(a), were entitled to a hearing as to whether their prolonged detention pending judicial review was necessary on the grounds that they posed a "danger to the community" or "flight risk."  Casas-Castrillon, 535 F.3d at 950-51.  Otherwise, the detention of the non-citizens would raise due process concerns.  Id.

Because the balance of hardships weighs heavily in petitioners' favor and their underlying petition for habeas corpus raises serious questions, petitioners' motion for preliminary injunction will be granted.

IT IS HEREBY ORDERED that petitioners' motion for preliminary injunction (docket no. 7) is granted.  Respondents shall forthwith schedule a bond hearing before the Office of the Immigration Judge to determine whether the continued detention of either petitioner presents a danger to the community or a risk of flight.

DATED:  December 19, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

/001; devi.oahf